**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Jeremy Joseph Kent, ) | No. CV-09-1616-PHX-JWS (LOA) |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Robert Cummings, etc., ) | |
| Defendant. ) | |

This matter arises on Defendant Robert Cummings' Motion to Compel Plaintiff Jeremy Joseph Kent to sign original medical authorizations, docket # 58, and Motion to Compel Plaintiff to Complete his Deposition and Request that Plaintiff Pay Defendant Attorney's Fees and Costs for Aborted Deposition, docket # 61.[1] The *pro se* prisoner Plaintiff responded on June 23, 2010 but addressed only Defendant's Motion to Compel Plaintiff to Complete his Deposition etc.[2] (docket # 68) Plaintiff did not respond to Defendant's Motion to Compel Plaintiff to sign original medical authorizations, docket # 58.

After reviewing the briefing, relevant civil rules and case law, the Court will grant both Motions and will order Plaintiff to cooperate in finishing his deposition within 30 days of

---

[1] The Court finds that under the circumstances, Defendant has sufficiently complied with Rule 37(a)(1), Fed.R.Civ.P., and LRCiv 7.2(j) to warrant judicial resolution of these discovery disputes. (docket # 61-1, Exhibits 2 and 3 at 4-5, 7)

[2] Plaintiff's Response was due on June 14, 2010. Because his Response has the date "6-11-10" at the top of the document and the Court was not provided the date it was delivered to prison officials for mailing, the Court will consider Plaintiff's Response as timely.

1 this order; will deny Defendant's request for sanctions for Plaintiff's unilateral termination of
2 his deposition; and will warn Plaintiff that failure to cooperate with defense counsel in
3 concluding his deposition, failure to answer appropriate questions during his deposition, or
4 failure to comply with court orders may result in the imposition of sanctions, which may include
5 the dismissal of his case with prejudice.

**BACKGROUND**

Plaintiff commenced this civil rights action on August 5, 2009 pursuant to 42 U.S.C. § 1983. (docket # 1) The Court dismissed the Complaint with leave to amend. (docket # 4) On September 4, 2009, Plaintiff filed a First Amended Complaint. On October 16, 2009, after screening the First Amended Complaint pursuant to 28 U.S.C. § 1915A(b)(1), (2), the Court ordered service on Defendant Cummings ("Defendant") and dismissed Defendants Groody, Reilly, Haggart, Arpaio, Macentyre, and Griffin and Count Three without prejudice. (docket # 7 at 8) Plaintiff's surviving claims allege in Count I that on May 8, 2009, Plaintiff was subjected to excessive force in violation of the Fourth Amendment and in Count II that Defendant "out of retaliation" placed handcuffs on Plaintiff too tightly and yanked Plaintiff's cuffed hands through a trap door, causing injury. (*Id*. at 4) Plaintiff's claims arose while he was incarcerated in Maricopa County's Fourth Avenue Jail. He is currently imprisoned in the Arizona Department of Corrections ("ADOC"), Lewis Prison, located in Buckeye, Arizona.

Defendant waived service of process on November 20, 2009 and a Notice of Appearance was entered on his behalf on December 15, 2009. (dockets ## 12, 18) On January 4, 2010, Defendant filed a Motion to Dismiss, docket # 28, alleging Plaintiff failed to exhaust administrative remedies as required by 42 U.S.C.A. § 1997e(a) of the Prison Litigation Reform Act.

On February 22, 2010, the assigned District Judge, the Honorable John W. Sedwick, denied Defendant's Motion to Dismiss, docket # 28, as to the claims in Count I for assault (excessive force in violation of the Fourth Amendment) and claims in Count II regarding retaliation by deprivation of a vegetarian meal and unprofessional conduct; and granted Defendant's Motion to Dismiss without prejudice as to the claims in Count II for retaliation by

a cell search and removing items during the cell search and allegedly forcing Plaintiff to hang up the telephone during a legal call. The First Amended Complaint alleges "Plaintiff's 4th Amendment (sic) was violated . . . when the Defendant D.O. Cummings violently yanked the plaintiff's cuffed hands through a 2 foot by 6 inch [door] trap causing laseration (sic) to both right and left wrist causing permanet (sic) scars. . . ." (docket # 6 at 5) Plaintiff requests compensation "in thee (sic) amount of $500,000.00 for damages, emotional, mentally, and physically, that are permanant (sic) as well as his visual scars that will never go away . . . ." (*Id.* at 8)

Defendant filed his Answer to Plaintiff's First Amended Complaint on February 23, 2010. On February 25, 2010, a discovery and scheduling order was entered, setting, among others, a May 27, 2010 deadline to take Plaintiff's deposition and a June 28, 2010 deadline to bring discovery disputes to the attention of the Court. (docket # 38 at 2) The scheduling order authorized the taking of Plaintiff's deposition by telephone at the option of the Defendant. (*Id.*)

In Defendant's Motion to Compel Plaintiff to sign original medical authorizations, Defendant requests an order compelling Plaintiff to sign original medical authorizations sent to him on January 5, 2010, March 9, 2010 and March 29, 2010, docket # 58-1, Exhibit A, at 3-8, or alternatively, an order directing Correctional Health Services ("CHS"), the healthcare provider operated by Maricopa County for inmates incarcerated in the Maricopa County jails,[3] to provide copies of Plaintiff's medical records to Defendant. (docket # 58 at 1-2)

Defendant contends Plaintiff's medical records are relevant and discoverable as a result of "Plaintiff's claim of injury[,]" pursuant to *Bain v. Superior Court*, 148 Ariz. 331, 334, 714 P.2d 824, 827 (Ariz. 1986) (when a plaintiff "places a particular medical condition at issue by means of a claim or affirmative defense, then the privilege will be deemed waived with

---

[3] Like the Maricopa County Sheriff's Office, CHS is not a jural entity. *Braillard v. Maricopa County*, ___ P.3d ___, 2010 WL 2134148, (Az.App.Ct. 2010) ("We therefore conclude MCSO is a nonjural entity and should be dismissed from this case."); *Payne v. Arpaio*, 2009 WL 3756679, * 5 (D.Ariz. 2009).

respect to that medical condition.") (internal citations omitted). *Id*. at 5. Defendant argues that because "Plaintiff has put at issue his medical condition alleging he was injured by Defendant[,] Defendant has the right to obtain the medical records of the treating facilities to explore and investigate this injury claim." Citing A.R.S. § 12-2294(A),(B) and (C) and contending CHS is a health care provider as defined by A.R.S. § 12-2291, Defendant "cannot obtain Plaintiff's medical records pursuant to a subpoena without a signed authorization or Court Order." (*Id*. at 3) Defendant "is not seeking medical records for the past 5 years, but only those records related to his treatment while in custody[]" in the Maricopa County jails. (*Id*. at 5) Significantly, Defendant cites no legal authority requiring a plaintiff, who seeks compensation for personal injuries in a § 1983 or tort action, to voluntarily sign a medical authorization for disclosure of his medical records.

In his Motion to Compel Plaintiff to Complete his Deposition etc., Defendant informs the Court that on May 10, 2010, defense counsel noticed Plaintiff's telephonic deposition for May 24, 2010 but because of prison delivery delays of exhibits intended to be used during the deposition and guard-prisoner transportation issues, the deposition was rescheduled to May 26, 2010. (docket # 61 at 2) Shortly after the deposition began, "Plaintiff advised counsel that he had not brought any documents with him to the deposition. He claimed that he had just received the documents and did not have them to bring with him because he did not know he was to be deposed until just prior to being brought to the room for the deposition." (*Id*. at 3) (footnote 1 omitted) According to defense counsel, after approximately 40 minutes of questioning,

> Plaintiff realized that he had revealed in his testimony that his retaliation and assault claims had no merit. At this time Plaintiff expressed that he did not feel comfortable going forward with the deposition because (1) he did not have the documents in front of him and he did not have time to review them, and (2) he was going to file a motion for an attorney.

(*Id*.)[4] Defense counsel claims Plaintiff became argumentative, refused to answer questions, and

---

[4] On June 24, 2010, Plaintiff filed a Motion Requesting a Court Apointed (sic) Attorney. (docket # 66) This Motion was denied by separate order on June 24, 2010. (docket # 70) The Court gives no weight to this reason to terminate his deposition because he has had since he filed this lawsuit, August 5, 2009, to request

- 4 -

then hung up the phone. (*Id.*) Defense counsel called back and Officer Mendoza confirmed on the record that Plaintiff had hung up the phone. (*Id.*) "Plaintiff then refused to take the receiver so that counsel could (1) continue and conclude the deposition or (2) verify Plaintiff would consent to a continued deposition at a later date." (*Id.*) (footnote omitted) The Court believes Defendant seeks sanctions pursuant to Rule 37(a)(5)(A).[5]

In his response, Plaintiff asserts that he "received the discovery disclosure . . . 27 hours prior to the deposition at which time the lawyer for the defendant expected the plaintiff . . . to have read a four or five inch stack of discovery."[6] (docket # 68 at 1) Plaintiff indicates that when defense counsel began questioning Plaintiff about the discovery documents, "he imeditily (sic) requested time to review the documents . . . ." (*Id.*) Plaintiff claims defense counsel then "became very rude," so Plaintiff requested counsel and that he has "an equal right to review the discovery before being questioned about things in the lawyers possision (sic) . . . that are not in the presents (sic) of the plaintiff." (*Id.*) He indicates that with only a fifth grade education, he'll need "sometime" (sic) to review the discovery. (*Id.*)

On June 3, 2010, Defendant lodged the deposition transcript of Plaintiff's May 26, 2010 as Exhibit 1 to Defendant's Motion to Compel Plaintiff to Complete His Deposition etc. (docket # 68, Exh 1 at 3-15) The transcript reflects that after questioning Plaintiff for a period of time (40 minutes according to defense counsel), including asking questions about two deposition exhibits not in front of Plaintiff, and frustrations clearly escalating on both sides, the following exchange took place between Ms. White, defense counsel, who was examining Plaintiff, and Plaintiff :

Q: [w]e are going to mark this as Exhibit 3 to your deposition.

---

[5] Defendant cites non-existent "Fed.R.Civ.Proc. 37(a)(2)(a)" in footnote 13 and partially quotes an outdated version of current Rule 37(a)(5)(A). (docket # 61 at 6)

[6] The deposition transcript corroborates Plaintiff's claim that he had insufficient time to review the disclosures and that ADOC officials took them away from him as contraband. Plaintiff testified that he "received [the package of disclosure materials] I believe Monday or yesterday [Tuesday, May 25, 2010]. I'm still in the process of reviewing it, and I have not been able to review the DVDs yet. In fact, they [ADOC officials] have contrabanded them due to where I'm at." (docket # 68, Exh 1 at 4-5)

- 5 -

1

(Exhibit No. 3 marked for identification.)

BY MS. WHITE:

    Q. And what we have marked as Exhibit 3, sir, is Grievance No. 09-04530 –

BY MR. KENT:

    A. 09 what?

    Q. -04530. And I just noticed that there's actually no Bates label on this Grievance.

    A. Is there a judge present at this time?

    Q. No. Why would there be a judge?

    A. Because I was curious on whether or not – I'm in the process of retaining counsel on this case, and **I'd like time to review these documents because I'm getting kind of confused right now**.

I **don't have these documents in my presence**. And not only that, like I said, I'm in the process of obtaining counsel and I'd like to talk to them about a few things before we go any further.

    Q. **So you are stopping the deposition**?

    A. **No, I'm asking if that's possible because I don't have these documents in front of me.** Also I have questions on something that I'm going to need legal advice on. I just want to make a record of that.

    Q. You have to clarify for me what you want to do here.

    A. **No. 1, I don't have these documents in front of me. No. 2, I haven't had a chance to review all these** and I don't know what I'm – what I'm talking to you about.

I'm not trying to get all mixed up in the middle of these things. **I would like to have a chance to review them at the same time you are reviewing them**.

And, No. 2, I'm in the process of obtaining counsel, which you will be getting my motion soon on that, and I have questions and I'd like to discuss it with my attorney prior to answering anything else.

    Q. So you are stopping the deposition?

    A. I'm not personally stopping it. I'm requesting for legal advice at this time from a lawyer that I'm in the process of retaining, and **I'd like to review these things as you are.**

That way I'm not getting confused over things. I don't know how other way to put it other than **I'd like the right to review the things at the same time you are reviewing them because you are kind of confusing me.**

    Q. So you are saying you don't want to continue the deposition because, one, you want to review the documents because you didn't bring them with you; and, two, you

- 6 -

| | |
|---|---|
| 1 | are trying to obtain counsel? |
| 2 | A. Yes, ma'am. |
| 3 | Q. So you want to discontinue the deposition? |
| 4 | A. I don't know how to answer that. I don't want you coming back saying that I'm doing it because I don't want to –that's not the point. |
| 5 | |
| 6 | I have questions I need to ask, and I have to ask them with legal counsel. I can't discuss them with you because you are not my counsel. |
| 7 | Q. I need clarification, sir, because we have a deadline of tomorrow to conduct your deposition, and I need to know for the record that based upon you want to review documents and have a chance to obtain counsel that you want to discontinue the deposition. |
| 8 | |
| 9 | A. I'm not discontinuing nothing. I was told on short notice, which was – I had all my documents ready for the deposition on Monday. That wasn't my fault, I was ready. |
| 10 | |
| 11 | Now I'm pulled out of my cell at two minutes' notice and **I'm being asked these questions about these documents. I need a right to be able to review these**, and any questions I have about them I have the right to do with counsel. |
| 12 | |
| 13 | So I'm not discontinuing anything. **I need to be prepared for this as well as you do because I have nothing in front of me, and I have the right to review them not just when I get them yesterday.** |
| 14 | |
| 15 | Q. These documents were provided to you on May 3rd. |
| 16 | A. On May 3rd? |
| 17 | Q. Yes. |
| 18 | A. I don't know because I just got a bunch of numbers in front of me. |
| 19 | Q. The point here, sir, is you have to make the decision whether to continue on with the deposition. I can't advise you. You're right. You can't ask me for advice. |
| 20 | |
| 21 | A. I'm not asking you for advice. I have the right to discuss it with any counsel I decide to obtain. |
| 22 | Q. Correct. |
| 23 | A. **I have the right to review the documents as you are**. |
| 24 | |
| 25 | Q. Sir, calm down a second, okay? I'm telling you that you are correct. I can't give you advice. But I do need you to express whether I am correct that because you do not have the documents in front of you and have not been able to read them and review them, and because you are seeking to obtain counsel, you do not feel comfortable with continuing this deposition at this time. |
| 26 | |
| 27 | Is that an accurate statement? |
| 28 | |

> A. I haven't had time to review these documents in which you are discussing, No. 1; and, No. 2, I have questions that I need to discuss with counsel before I go any further because you are confusing me on a lot of these questions.
>
> Q. And so you do not feel comfortable with continuing the deposition at this time; correct?
>
> Mr. Kent? Mr. Kent?
>
> (Telephone call abruptly ended and telephone call re-made.)

*Id*. at 8-9 (emphasis added). The remaining portion of the transcript confirms defense counsel immediately called back, spoke to ADOC Officer Mendoza, who said Plaintiff "hung the phone up" and refused to take the phone back. *Id*. at 9. Defense counsel then stated on the record: "[W]e are going to stop the deposition at this time . . . Mr. Kent has refused to continue this deposition because he wants to consult with counsel and he wants to review his documents." *Id*.

## **DISCLOSURE OF MEDICAL RECORDS IN § 1983 ACTIONS**

Assertions of privileges in federal-question cases are governed by the federal common law. Rule 501,[7] Fed.R.Evid.; *Jaffee v. Redmond*, 518 U.S. 1, 8 (1996) ("Rule 501 of the Federal Rules of Evidence authorizes federal courts to define new privileges by interpreting 'common law principles . . . in the light of reason and experience.'"). "The patient-physician privilege does not exist at federal common law and the Ninth Circuit has not recognized a

---

[7] Rule 501 of the Federal Rules of Evidence provides in part as follows:

> Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person . . . shall be governed by the principles of the common law as they may be interpreted by the Courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person . . . shall be determined in accordance with State law.

Rule 501, Fed.R.Evid.

- 8 -

1 physician-patient privilege . . . ." *Soto v. City of Concord*, 162 F.R.D. 603, 618 (N.D.Cal. 1995). Because Plaintiff has not alleged a pendent state law claim, federal common law controls this discovery dispute. *See, Platypus Wear, Inc. v. K.D. Co., Inc.*, 905 F.Supp. 808, 811 (S.D.Cal. 1995) (holding that state privilege law applied to state law claim in federal- question case where the evidence sought was directed only to state law theories of liability and plaintiff advanced no theory under which the evidence could be relevant to the federal claims in the case).

Generally, "[t]he privacy interest in one's confidential medical records is conditional and a limited impairment of the right may be allowed if properly justified." *Hutton v. City of Martinez*, 219 F.R.D. 164, 166 (N.D.Cal. 2003) (citing *Soto*, 162 F.R.D. at 618). Pursuant to Rule 26(b)(1), Fed.R.Civ.P., "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." Rule 26(b)(1) further provides that "[r]elevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Rule 26(b)(1), Fed.R.Civ.P. "It is Rule 26(b) that supplies the directives that federal courts must follow when trying to determine how far beyond clearly admissible evidence parties may cast their discovery nets." *Bernstein v. Travelers Ins. Co.*, 447 F.Supp.2d 1100, 1102 (N.D.Cal. 2006). "It is to that Rule's guidance that federal courts are to turn when trying to decide how long and how indirect the inferential or sleuthing paths may be between the targets of discovery requests, on the one hand, and, on the other, matters obviously central to the parties' claims and defenses." *Id*.

"Broad discretion is vested in the trial court to permit or deny discovery, and its decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002) (citing *Goehring v. Brophy*, 94 F.3d 1294, 1305 (9th Cir. 1996) (quoting *Sablan v. Dep't of Fin.*, 856 F.2d 1317, 1321 (9th Cir. 1988)). Nevertheless, a litigant's waiver of privacy rights by putting private matters at issue in a lawsuit is limited to the private information that is relevant to the lawsuit. *e.g.*, *Doe v. City of Chula Vista*, 196 F.R.D. 562, 569-70 (S.D.Cal.1999) (a plaintiff's claim for emotional distress damages "does not entitle defendants to invade the whole of [the plaintiff's] medical history").

## **DISCOVERY SANCTIONS AND THE CIVIL RULES**[8]

Rule 37, FED.R.CIV.P., authorizes a district court, in its discretion, to impose a wide range of sanctions when a party fails to comply with the rules of discovery or with court orders enforcing those rules. *U.S. Equal Employment Opportunity Com'n v. ABM Industries Inc.*, 2009 WL 1287757, * 2 (E.D.Cal. 2009) (citations omitted). As previously mentioned, Rule 26(b)(1), Fed.R.Civ.P., provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party." "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D.Cal. 2005) (quoting *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D.Cal. 1998) (internal quotation marks omitted). "Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of information even though the information may not be admissible at the trial." *Id.* (citing *Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan. 1993)).

When an adverse party fails to cooperate in discovery, the party seeking discovery may move to compel disclosure or discovery. Rule 37(a)(1), Fed.R.Civ.P. The party seeking discovery may move to compel a deponent to answer an appropriate question in an oral deposition and request sanctions for a refusal to answer. Rule 37(a)(3)(B)(I) and Rule 37(a)(5)(A), Fed.R.Civ.P. Further, if a party fails to appear for a deposition, the district court may impose such sanctions as it deems appropriate. Rule 37(d)(1)(A)(I) and Rule 37(b)(2)(A)(i)-(vi), Fed.R.Civ.P.; *Caesars World, Inc. v. Milanian*, 126 Fed.Appx. 775, 777 (9th Cir. 2005) ("The district court did not abuse its discretion in precluding [a party] from

---

[8] Effective December 1, 2007, the language in Rules 30, 37, and other Rules of Civil Procedure were amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the Rules. *Harvest v. Castro*, 531 F.3d 737, 745 n. 7 (9th Cir. 2008). Because no substantive changes were intended, federal courts interpret the new Rules by applying precedent related to the prior versions of the Rules. *Summer H. v. Fukino*, 2009 WL 1249306, * 2 (D.Hawai'i, 2009).

1 testifying at trial as a sanction for failing to appear at his properly scheduled and noticed
2 deposition.").

3 When a motion for an order compelling discovery is granted, "the court **must**, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. A district court, however, **must not** order this payment if: . . . (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust. Fed. R.Civ.P. 37(a)(5)(A) (emphasis added) or 37(d)(3) (related to a failure to appear at deposition).

Federal Rule of Civil Procedure 30 governs a person's behavior during a deposition. Generally, objections to a question during a deposition are noted on the record, "but the examination still proceeds; the testimony is taken subject to any objection." Rule 30(c)(2), Fed.R.Civ.P. The only authorized exceptions for a deponent to not answer a question, or for a lawyer to instruct a deponent not to answer a question, are "when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." (*Id.*) Rule 30(d)(3), Fed.R.Civ.P., allows a deponent or a party to "move to terminate or limit [a deposition] on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Rule 30(d)(3), Fed.R.Civ.P. "If the objecting deponent or party so demands, the deposition must be suspended for the time necessary to obtain an order." (*Id.*) Rule 30(d)(3)(A) "is the only authority allowing the interruption of a deposition." *Biovail Laboratories*, Inc., 233 F.R.D. 648, 653 (C.D.Cal. 2006) (citing *Perrignon v. Bergen Brunswig Corp.*, 77 F.R.D. 455, 460-61 n. 4 (N.D.Cal. 1978); *Hanlin v. Mitchelson*, 623 F.Supp. 452, 455 (S.D.N.Y.1985), *reversed in part on other grounds by*, *Hanlin v. Mitchelson*, 794 F.2d 834 (2d Cir. 1986).

If any person's conduct "impedes, delays, or frustrates the fair examination of the deponent[,]" a district court may impose "appropriate sanctions," including "the reasonable expenses and attorney's fees incurred by any party." Fed. R. Civ. P. 30(d)(2). "What constitutes

- 11 -

1  reasonable expenses and appropriate sanctions is a matter for the Court's discretion." *Jadwin*
2  *v. County of Kern*, 2008 WL 2064514, * 2 (E.D.Cal. 2008) "Monetary sanctions are the
3  sanctions primarily available under Rule 30(d)(3) [predecessor to current Rule 30(d)(2)]."
4  *Biovail Laboratories*, 233 F.R.D. at 653 (citations omitted).

"The very purpose of Rule 37 is to insure compliance with discovery orders. Without adequate sanctions the procedure for discovery would be ineffectual." *Grimes v. City and County of San Francisco*, 951 F.2d 236, 240-41 (9th Cir. 1991) (citation and internal quotation marks omitted). "To that end, Rule 37 is flexible: The sanctions enumerated in the rule are not exclusive and arbitrary but flexible, selective, and plural. The court may, within reason, use as many and as varied sanctions as are necessary to hold the scales of justice even." *Id.* at 241. Rule 37 sanctions will not be reversed unless the Ninth Circuit has "a definite and firm conviction that the court committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997).

Rule 37(a)(5)(A) and (B), Fed.R.Civ.P., are clear, however, that regardless whether the discovery motion is granted, the district court may not order payment of either side's reasonable expenses incurred in bringing the discovery motion or defending against it if the opposing party's non-disclosure or objection was "substantially justified" or "other circumstances make an award of expenses unjust." Rule 37(a)(5)(A)(ii), (iii), Fed.R.Civ.P.

The Court finds that sanctions are not appropriate against Plaintiff for refusing to sign a medical authorization because Defendant has provided no authority requiring a plaintiff to voluntarily sign a medical authorization for release of his medical records. In fact, there is District of Arizona authority to the contrary. *Wilkins v. Maricopa County*, 2010 WL 2231909 (D.Ariz. 2010); *Schwartz v. Home Depot U.S.A., Inc.*, 2007 WL 2020112, * 1 (D.Ariz. 2007) ("We reject defendants' contention that compelling plaintiffs to sign releases is the only way defendants may access the records at issue.") Because Defendant is entitled to seek and obtain by subpoena the relevant healthcare records he requested, a professional and courteous lawyer should recommend his client voluntarily sign a limited medical authorization in a spirit of cooperation and to reduce the costs of litigation "mindful of [lawyers'] obligations to the

administration of justice, which is a truth-seeking process designed to resolve human and societal problems in a rational, peaceful, and efficient manner."[9] Without any authority requiring him to do so, Plaintiff, a non-lawyer, was justified in refusing to voluntarily sign medical authorizations. Therefore, an award of expenses as a sanction against Plaintiff would be improper and unjust. Of course, if Defendant prevails in this litigation, he would likely be entitled to reimbursement from Plaintiff for the costs of a subpoena *duces tecum*. Rule 54(d)(1), Fed.R.Civ.P; LRCiv 54.1.

**DISCUSSION**

**A. Plaintiff's Medical Records**

Defendant's request for the discovery of Plaintiff's CHS' medical records is narrow, relevant and appropriate. Plaintiff's claim for damages that Defendant intentionally and violently yanked Plaintiff's cuffed hands through a door trap, causing lacerations and permanent scars, docket # 6 at 5, has directly placed Plaintiff's private medical records and his injuries in controversy. Defendant is entitled to verify Plaintiff's medical claims and his credibility. The Court concludes that these reasons justify the limited disclosure of Plaintiff's CHS' records because such records directly relate to Plaintiff's personal-injury claims voluntarily raised in this litigation and a party's credibility is always relevant. Defendant's Motion will be granted and the Court will authorize defense counsel to obtain these records directly from CHS without a signed medical authorization from Plaintiff.

**B. Follow-up Deposition and Sanctions**

The record is clear and undisputed that ADOC officials did not provide Plaintiff with Defendant's disclosures and documents until a day or two before Plaintiff's deposition;

---

[9] Preamble, District of Arizona's Standards for Professional Conduct. Also see, Lawyers' Duties to Other Counsel, No. 9 (" In civil actions, we will stipulate to relevant matters if they are undisputed and if no good faith advocacy basis exists for not stipulating.") *Id*. Unfortunately, neither the Local Rules nor a General Order require a *pro se* litigant to comply with the Standards for Professional Conduct.

thereafter these disclosures and documents were confiscated by ADOC officials as "contraband"; that Plaintiff did not have the discovery and documents with, and in front of, him during his deposition; and that ADOC officials gave Plaintiff little notice that his deposition would be taken over the telephone and, therefore, he had little time to prepare for defense counsel's cross-examination, especially as to Defendant's disclosures and documents. All of these events appear to be outside the control of Plaintiff and defense counsel. These unfortunate events underscore the extraordinary challenges to lawyers and litigates in, among many others, conducting a telephonic deposition in a high-security, prison environment.

The Court finds that under the circumstances, neither Plaintiff nor defense counsel acted in bad faith or in a manner that unreasonably annoyed or embarrassed Plaintiff or defense counsel. Arguably, forcing a *pro se* prisoner, without counsel and with a limited education, to continue to undergo cross-examination about documents without the physical presence of the relevant documents, a fair opportunity to have read them, and sufficient time to prepare for his deposition constitute a form of unreasonable "oppression" or an "unjust exercise of power"[10] upon Plaintiff by ADOC officials within the context of this § 1983 litigation and the meaning of Rule 30(d)(3)(A), Fed.R.Civ.P. Understandably, defense counsel was under pressure to comply with the scheduling order's deadlines and was unsure whether the Court would allow Plaintiff's deposition to resume after the May 27, 2010 deadline. Conversely, Plaintiff was entitled to fair notice of his deposition and a fair opportunity to have read and studied the documents before being questioned under oath about the documents and to have the documents in front of him during his deposition. After numerous requests by Plaintiff indicating his strong desire to have time to review the documents and have them in front of him during his deposition and that he was confused, defense counsel and Plaintiff should have stipulated and agreed to voluntarily pause Plaintiff's deposition and reset it to an agreed-upon date and time subject to ADOC approval, thereby allowing Plaintiff more time to review the disclosures and have his

---

[10] The Merriam-Webster Online Dictionary defines "oppression" as " unjust or cruel exercise of authority or power." (http://www.merriam-webster.com/dictionary/oppression, dated June 26, 2010)

legal materials and documents with him at the time his deposition resumed. Certainly good cause existed to do so. In fact, when Plaintiff asked defense counsel, "I'm asking if that's possible [stopping the deposition at this time] because I don't have these documents in front of me[,]" docket # 63-1 at 8, l. 11-12, counsel should have stipulated and agreed to pause the deposition and reschedule it for another day. Instead, when defense counsel continued to ask Plaintiff several times whether he wanted to terminate the deposition, Plaintiff was equivocal and non-responsive to her questions until he eventually hung up the phone. Although the manner in which Plaintiff terminated his deposition was rude, inappropriate and unprofessional, Plaintiff was substantially justified in pausing the deposition and requesting more time to review the documents recently delivered to him and to have those documents in his actual possession when questioned about them during his deposition.

Under the circumstances of the May 26, 2010 telephonic deposition, the Court finds that an award of expenses against Plaintiff, a non-lawyer and unsophisticated litigant unfamiliar with Rules 30 and 37, would be unjust. The Court will order that Plaintiff's deposition be resumed and that there must be full and complete compliance with the Rules of Civil Procedure by each side before and during Plaintiff's deposition; otherwise sanctions will be imposed. Plaintiff may not refuse to answer questions or unilaterally end the rescheduled deposition because defense counsel is asking questions of Plaintiff that call for either admissions or answers against Plaintiff's interests.

Because it us unlikely Plaintiff will have the assistance of counsel in this civil litigation, Plaintiff must become familiar, and comply, with the Rules of Civil Procedure and the Local Rules of Practice for the District Court for the District of Arizona ("LRCiv"). *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987) ("*Pro se* litigants must follow the same rules of procedure that govern other litigants.") (citing *United States v. Merrill*, 746 F.2d 458, 465 (9th Cir. 1984), *cert. denied*, 469 U.S. 1165 (1985)).

Accordingly,

**IT IS ORDERED** that Defendant's alternative claim for relief in his Motion to Compel, docket # 58, is **GRANTED**.

1 **IT IS FURTHER ORDERED** that Maricopa County's Correctional Health Services
2 shall provide complete copies of Plaintiff's healthcare records narrowly tailored by and to
3 defense counsel, S. Lee White, Esq. or her designee, upon service of a subpoena *duces tecum*
4 and a certified copy of this order. Upon receipt of Plaintiff's medical records, Ms. White shall
5 promptly review the records for those specifically related to Plaintiff's care and treatment for
6 his alleged injuries which form the basis of Plaintiff's claims in this lawsuit. All medical
7 records provided to counsel unrelated to Plaintiff's care and treatment for his injuries claimed
8 in this lawsuit shall be given to Plaintiff within **ten (10 days)** of their physical receipt by Ms.
9 White or her designee without duplication for Plaintiff's destruction or his own personal use
10 unrelated to this litigation. Copies of Plaintiff's healthcare records which defense counsel
11 retains for this litigation shall also be provided to Plaintiff within **ten (10 days)** of their physical
12 receipt by Ms. White or her designee. Defendant shall be responsible for payment of all costs
13 incurred in obtaining Plaintiff's medical records subject to reimbursement at the conclusion of
14 this litigation as authorized by law.

15 **IT IS FURTHER ORDERED** that Defendant's Motion to Compel Plaintiff to
16 Complete his Deposition and Request that Plaintiff Pay Defendant Attorney's Fees and Costs
17 for Aborted Deposition, docket # 61, is **GRANTED** in part and **DENIED** in part.

18 **IT IS FURTHER ORDERED** that Plaintiff's telephonic deposition shall resume
19 **within 30 days** of this order on a date and time defense counsel, Plaintiff, and ADOC officials
20 or its counsel may agree. Absent agreement by defense counsel, Plaintiff, and ADOC officials,
21 defense counsel may set the date and time of Plaintiff's telephonic deposition with the express
22 consent of ADOC officials or its counsel provided Plaintiff is given reasonable written notice.
23 Rule 30(b)(1), Fed.R.Civ.P.

24 **IT IS FURTHER ORDERED** that defense counsel shall provide a complete copy
25 of this order to ADOC officials or its counsel at the time of, or when, rescheduling Plaintiff's
26 deposition. ADOC officials are kindly requested to allow Plaintiff reasonable physical access
27 to his legal file for this case and all its documents prior to his deposition in order that Plaintiff
28 may fairly prepare for his deposition before being questioned under oath about such documents

and to have his legal file and documents in front of him during his rescheduled deposition. All other requested relief by Defendant is **DENIED**.

DATED this 28th day of June, 2010.

Lawrence O. Anderson
United States Magistrate Judge